**STRATTON WATER COMPANY**

v.

**MAINE PUBLIC UTILITIES COMMISSION.**

Supreme Judicial Court of Maine.

Feb. 6, 1979.

---

Verrill & Dana by Michael T. Healy (orally), Portland, for plaintiff.

Horace S. Libby, Public Utilities Commission, Frederick S. Samp (orally), Augusta, for defendant.

Before WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

Pursuant to 35 M.R.S.A. § 303[1] Stratton Water Company (Stratton) seasonably appealed the decision FC # 2204 of the Maine Public Utilities Commission (PUC), in which the PUC excluded for rate-making purposes expenses of Stratton incurred in presenting its case to the PUC for a rate increase, which was denied within FC # 2204. In FC # 2204 the PUC had also disallowed the expenses incurred by Stratton to appeal the decision of the PUC designated FC # 2073.

Following the decision of this court in *In re Stratton Water Company Proposed Increase*, Me., 383 A.2d 1373 (1978) (the appeal of *FC # 2073*), the PUC, without notice or providing Stratton with an opportunity to be heard, on April 21, 1978, *amended FC # 2204*, which established Stratton's rates at that time. In line with our decision in *In re Stratton Water*, the PUC altered its latest rate case order regarding Stratton by restoring $10,000 to Stratton's capital equity account. It was not necessary for the PUC to increase the rate schedule for Strat-

---

1. Pertinent portions of Section 303 state:

    Questions of law; certification of decisions
    An appeal from a final decision of the commission may be taken to the law court on questions of law in the same manner as an appeal from a judgment of the Superior Court in a civil action. Any person, who has opposed and participated in opposition to applications, petitions or commission proceedings upon which a public hearing was held and who is adversely affected by the final decision of the commission, is deemed a party for purposes of taking an appeal from such decision. . . .

Relative to FC # 2204 Stratton also filed two complaints with this court pursuant to 35 M.R.S.A. § 305:

    [I]n all cases in which the justness or reasonableness of a rate, toll or charge by any public utility or the constitutionality of any ruling or order of the commission is in issue, the law court shall have jurisdiction upon a complaint to review, modify, amend or annul any ruling or order of the commission, but only to the extent of the unlawfulness of such ruling or order. . . .

In light of the disposition of this case, we find it unnecessary to discuss the Section 305 complaints.

ton to provide any additional allowable revenues mandated by *In re Stratton Water*. In response to this order of the PUC, Stratton filed a Petition to Rehear and Reopen pursuant to PUC Rule 5, which the PUC failed to take any action on, and Stratton thereupon filed a timely appeal of the April 21st order.

Stratton filed another petition for a rate increase on October 28, 1977, which resulted in PUC decision FC # 2313. FC # 2313, like FC # 2204, disallowed for rate-making purposes Stratton's expenses involved in appealing FC # 2073 and Stratton's cost in presenting its rate case to the PUC in the matter of FC # 2204. FC # 2313 also disallowed for rate-making purposes the expense of appealing FC # 2204. Following the denial of Stratton's Petition to Rehear and Reopen, Stratton filed a timely appeal of FC # 2313.

The appeals arising out of FC # 2204, the PUC order of April 21, 1977, amending FC # 2204, and FC # 2313 are consolidated here on appeal.

We sustain the appeals.

### AMENDMENT OF FC # 2204 WITHOUT HEARING

In its order contained within FC # 2073 the PUC disallowed $10,000.00 from Stratton's equity capital account for the purpose of determining Stratton's appropriate rate of return. When Stratton appealed FC # 2073, we stated in *In re Stratton Water, supra* at 1379:

> In disallowing $10,000.00 in equity capital, the Commission has altered the capital structure of Stratton in such a way as to preclude Stratton from receiving a fair rate of return. We therefore hold that the Commission must restore the $10,000.00 in equity capital to the capital structure of Stratton in order to comply with the legislative mandates.

The matter was "[r]emanded to the Public Utilities Commission for further proceedings" consistent with that opinion.

When the rate case designated FC # 2073 was remanded to the PUC, Stratton had again sought a revision in its rate schedule in order to increase revenues. Within its order entitled FC # 2204, a matter distinct from FC # 2073 but in which the PUC had also excluded $10,000 from Stratton's capital equity account, the PUC denied Stratton's request for a rate increase.

In its attempt to execute the mandate of the order on remand in *In re Stratton Water*, the PUC merely amended its order FC # 2204, which established the effective rates for Stratton, by adding $10,000 to Stratton's capital equity account. The PUC did not give Stratton notice of its proposed action nor allow Stratton an opportunity to be heard regarding the amendment to FC # 2204.

Stratton asserts that 35 M.R.S.A. § 306 mandates notification and an opportunity to be heard before the PUC alters an order distinct from the order appealed and remanded. We disagree. Section 306 provides:

### Orders altered or amended

> The commission may at any time upon notice to the public utility, and after opportunity to be heard as provided in section 293, rescind, alter or amend any order fixing any rate or rates, tolls, charges or schedules or any other order made by the commission, and certified copies of the same shall be served and take effect as provided for original orders.

The obvious intendment of Section 306 is to enable the PUC to alter or amend *upon its own initiative* its orders. Clearly, however, the PUC need not rely upon the enabling provision of Section 306 when it is required to act pursuant to a decision of this court in order to correct an erroneous rate base. The PUC in the latter instance is merely undoing that which it never had the authority to effect.

To carry out the mandate of *In re Stratton Water* required the PUC to amend a decree other than the order generating the appeal, since a subsequent rate hearing and decree established the effective rates for

Stratton. The PUC had no right to alter the decision of this court in any fashion but was compelled to effectuate the same expeditiously. A hearing prior to giving effect to the mandate of *In re Stratton Water* could not possibly have changed this responsibility of the PUC. Nor has appellant demonstrated the manner in which a hearing could have facilitated the PUC's accomplishment of that order on remand.

Since the *authority* of the PUC to amend FC # 2204 in order to implement this court's decision was *not dependent upon Section 306*, the requirement of Section 306 for notice and a hearing were *likewise inapplicable*. Nor do the requirements of due process necessitate a hearing in this instance, in which the parties had a full opportunity to be heard upon their respective positions before this court reached its decision in *In Re Stratton Water*.

## DISALLOWANCE OF STRATTON'S EXPENSES IN APPEALING FC # 2073

■ Within its decree designated FC # 2204 the PUC found

that the decision to spend $1,908.66[2] to prosecute the appeal of FC # 2073 was unreasonable regardless of the outcome of the appeal, and [the PUC would] not allow any amortization of that amount to be included in [Stratton's] operating expenses.

The PUC premised this finding pursuant to 35 M.R.S.A. § 51[3] upon the fact that even if Stratton ultimately prevailed upon the single issue appealed in FC # 2073, as it did, no increase in the allowable revenues would be necessitated. The addition of three new metered services to Stratton's operations resulted in the existing Stratton rate schedule providing a level of revenues $340

greater than Stratton's revenue requirement even if the appeal of FC # 2073 were resolved favorably to Stratton.

Implicit in the PUC's determination of the unreasonableness of the expense to appeal FC # 2073 is its finding of fact that Stratton knew or should have known that the three new metered services would generate $942 in additional revenues. The most that the inclusion of the disputed $10,-000 of equity capital could have increased Stratton's gross revenue requirement was $602, $340 less than the excess amount of revenues provided by the authorized rate schedule. The essence of the PUC's disallowance of the appeal expenses, therefore, is that an appeal undertaken without any chance of an increase in rates on the basis of a favorable resolution of the issue appealed results in expenses incurred without justification. Thus, such appeal expenses are *per se* unreasonable and subject to disallowance pursuant to 35 M.R.S.A. § 51.

We believe this approach is a sound one and represents the natural extension of a recognized policy with respect to expenses involved in bringing a rate case before a public utilities commission. *Presque Isle Water Co. v. Itself*, 18 P.U.R. (N.S.) 385, 399 (Me.P.U.C.1937), disallowed rate case expenses when the company failed to justify its petition for a rate increase. *See also Re New England Telephone & Telegraph Company*, 13 P.U.R. 4th 65, 86–87 (Me.P.U.C. 1976). Many other jurisdictions have adopted this practice of finding rate case expenses unreasonable when the utility is unable to justify its proposed rate increase. *See, e. g., Re New Jersey Bell Telephone Company, et al.*, 99 P.U.R.3d 252, 254 (New Jersey Board of P.U.C.1973) ("[T]he cost of rate cases designed purposefully to increase the rate of return to the stockholders will

2. As of December 31, 1976, the expense incurred in appealing FC # 2073, not then finally decided by this court, was $1,908.66. Ultimately the total expense for the appeal of FC # 2073 amounted to $2,308.46.

3. The pertinent portion of 35 M.R.S.A. § 51 provides:

In determining just and reasonable rates, the commission shall provide such revenues to

the utility as may be required to perform its public service and to attract necessary capital on just and reasonable terms. Every unjust or unreasonable charge for such service is prohibited and declared unlawful. In determining just and reasonable rates, the commission may consider whether the utility is operating as efficiently as possible and is utilizing sound management practices.

be borne by those stockholders and not by the customers." Id.); *Pennsylvania P. U. C. v. York Telephone & Telegraph Company*, 53 P.U.R.3d 146, 181 (1963). The logic of such a practice is undeniably sound.

> To hold otherwise would be to make it possible for a utility to force rate increases upon its customers solely as a result of expenses incurred in abortive or frivolous rate cases.

*Re Carolina Water Company*, 32 P.U.R.3d 462, 470 (N.C.U.C.1960).

In a similar fashion, to allow expenses for an appeal from a decree of the PUC when a rate increase cannot result even from a decision favorable to the utility would force utility customers to pay for meaningless appeals of PUC orders that have no impact upon the utility's rate structure.[4] *Cf. Re Staten Island Edison Corporation*, 60 P.U.R. (N.S.) 385, 472 (N.Y.P.S.C.1945). (Expenses incurred in litigating the constitutionality of a temporary rate order were not allowed.)

We cannot conclude, however, that the order of the PUC, FC # 2073, which deleted $10,000 from Stratton's capital equity account, was meaningless. Whether or not the $10,000 was lawfully excluded was determinative of the allowability of $602 in annual gross revenues. Although Stratton was not unconstitutionally deprived of a fair rate of return since it had revenues more than $602 in excess of the anticipated revenues from the authorized rate schedule, the PUC was obviously going to base *future* rate schedules upon Stratton's capital equity account without the disallowed $10,000.[5] Future rate schedules would undoubtedly not allow for gross revenues much in excess of the determined appropriate rate of return for Stratton, calculated without including the $10,000. At that time the inclusion of the disputed $10,000 would necessitate a rate increase and Stratton would

obviously be entitled, according to the previously enunciated rule, to the inclusion of its appeal expenses in litigating this issue.

To have litigated that issue in advance of the point in time in which its determination would immediately result in a rate increase should not result in the disallowance of the expenses in appealing the issue. Clearly the matter was not trivial nor would it be without a significant impact upon the authorized rate structure of Stratton, although its effect would not be immediate.

In summary, we believe that the PUC may justifiably determine that expenses of a utility in bringing an appeal in which the utility ultimately prevails are "unreasonable" within the meaning of Section 51. The PUC must necessarily determine, however, that its order appealed from is trivial and would have no significant impact, immediate or within the near future, resulting in the utility's right to an increase in its authorized rate schedule if successfully appealed.

## DISALLOWANCE OF STRATTON'S EXPENSES IN PRESENTING ITS RATE CASE DESIGNATED FC # 2204

■ Within FC # 2204 the PUC disallowed for rate-making purposes the expenses of Stratton incurred in presenting its case for a rate increase to the PUC in the matter resulting in FC # 2204. Within that decree the PUC stated:

> The only purpose that could be accomplished by a rate increase now is the payment of the appeal expenses which we have already found to have been unreasonably incurred. It is for this reason that we disallow for rate-making purposes the entire cost of this proceeding.

Since we decide that the PUC should not have applied a *per se* rule to completely exclude Stratton's FC # 2073, the PUC

---

4. The effect of relatively large rate case and appeal expenses upon a small utility's rate structure has not gone unnoticed by this court. In 1975, for instance, the appellant had operation and maintenance expenses of only $5,917.59 but regulatory expenses of $7,320.78

that would have to be amortized over a two to three-year period.

5. In its decree denominated FC # 2204, the PUC did, in fact, rely upon FC # 2073, in which it disallowed $10,000 of Stratton's capital equity account.

likewise erred in finding Stratton's rate case expenses in FC # 2204 unreasonable on the basis of that *per se* rule.[6]

## ADJUSTMENTS TO THE PRO FORMA OPERATION AND MAINTENANCE EXPENSES

Within FC # 2204 the PUC made certain adjustments to Stratton's operation and maintenance expense projections. Although a subsequent rate case has made the accuracy of these adjustments moot, whether the adjustments were lawfully made is relevant to the matter of the allowability of Stratton's rate case expenses in FC # 2204. The downward adjustments by the PUC contributed to the denial of a rate increase for Stratton within FC # 2204. A rate increase having been denied, rate case expenses were also disallowed for rate-making purposes in accordance with the rationale in *Re Carolina Water Company, supra.*

On appeal Stratton contends that the PUC failed to make adequate findings of fact and conclusions of law relative to its adjustments to the pro forma operation and maintenance expenses. With respect to the legal, insurance and employees welfare costs the PUC merely stated:

> [W]e find that test year expense for legal, insurance and employees welfare were abnormal. Because of large fluctuation in legal and insurance expenses we will rely on a four year average and adjust these expenses downward by $225. With regard to employees welfare expense we consider the actual 1976 experience to be most appropriate and further decrease expenses by $201.

■ Since it is apparent from the circumstances of the PUC's terse findings of fact that it was attempting to arrive at the most accurate projection of Stratton's operation and maintenance expenses, a finding that a test year's expense for a certain item is abnormal is sufficient to allow for judicial review. *But compare Gashgai v. Board of Registration in Medicine*, Me., 390 A.2d 1080, 1084–86 (1978).

With respect to the PUC's reduction of Stratton's pro forma expenses for customers' accounting and collecting, the PUC merely declared that there had been a "marked reduction in expenses for customers' accounting and collection." We are unable to imagine and appellant has offered no suggestion regarding the manner in which this finding could be more fully elucidated in order to assist judicial review.

Stratton also contends on appeal that the PUC acted without sufficient evidence with regard to the adjustments of the pro forma operation and maintenance expenses. The gist of appellant's argument is that a late-filed exhibit was never made part of the record on appeal and cannot be relied upon to support the findings of the PUC. Nevertheless, we are made aware of the exhibit's existence by a letter within the record-appendix from appellant's counsel, in which he offers to submit the "up-to-date 1976 balance sheets and profit and loss statements," and the PUC's statement of reliance thereon within its order designated FC # 2204. Moreover, although the PUC mistakenly failed to place the late-filed exhibit within the record, the exhibit has subsequently been made available to this court and stipulated to be a part of the record on appeal. We conclude that sufficient evidence existed to support the PUC's findings relative to its adjustments of the pro forma expenses.

## APPEAL OF FC # 2313

Within the rate case designated FC # 2313 the identical issues of the allowability of appeal expenses for FC # 2073 and rate case expenses for # 2204 were presented to the PUC, which dealt with the matters as it had in FC # 2204. Our discussion relative to the appeal of FC # 2204 is, therefore, determinative of the appeal of Stratton's most recent rate case.

The entry is:

Appeals denied in part.

---

6. We do not decide, however, that the PUC pursuant to Section 51 may not correctly determine on some other basis that Stratton's rate case expenses or a portion thereof were unreasonably incurred.

Appeals sustained in part.

Remanded to the PUC for further proceedings consistent with this opinion.

McKUSICK, C. J., and POMEROY, J., did not sit.